UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY BEAGLE,

                    Plaintiff,                             Hon. Robert J. Jonker

v.                                                  Case No. 1:19-cv-952

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.   Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining

whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## **BACKGROUND**

Plaintiff was 38 years of age on her alleged disability onset date. (PageID.374). She possesses an eleventh-grade education and worked previously as an injection molder, small parts assembler, cashier/retail manager, and horticultural worker. (ECF No. 7-2, PageID.82, 102). Plaintiff applied for benefits

-2-

on October 23, 2015, alleging that she had been disabled since June 9, 2015, due to fibromyalgia, anxiety, depression, rheumatoid arthritis, "abnormally small kidneys," and "female problems."   (ECF No. 7-5, 7-6, PageID.374-88, 421).

Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).   (ECF No. 7-3, 7-4, PageID.214-372). Following an administrative hearing, ALJ Robert Chavez, in an opinion dated August 10, 2018, determined that Plaintiff did not qualify for disability benefits. (ECF No. 7-2, PageID.72-84, 94-147).   The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (*Id.*, PageID.25-30).   Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.   *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).   If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.   *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).   The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity.   *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate she is entitled to disability benefits and she satisfies her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A).  While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined.  *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffered from: (1) rheumatoid arthritis; (2) osteoarthritis; (3) left knee meniscus tear, status post meniscectomy; (4) complex ovarian cysts; (5) chronic obstructive pulmonary disease (COPD); (6) fibromyalgia; (7) obesity; (8) depression; and (9) anxiety disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.   (PageID.75-77).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform light work subject to the following limitations: (1) she can only occasionally perform handling and fingering activities bilaterally; (2) she can occasionally climb ramps and stairs, but can never climb

ladders, ropes, or scaffolds; (3) she can frequently balance and stoop and occasionally kneel, crouch, and crawl; (4) she can never work at unprotected heights and can only occasionally work around moving mechanical parts; (5) she can never tolerate humidity or wetness and can only occasionally tolerate dust, odors, fumes, or pulmonary irritants; and (6) she is limited to work involving simple routine tasks and simple work related decisions.   (*Id.*, PageID.77).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, her limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316.   In satisfying this burden, the ALJ may rely on a vocational expert's testimony.   *Ibid.*

In this case, a vocational expert testified that there existed approximately 152,000 jobs in the national economy that an individual with Plaintiff's RFC could perform, such limitations notwithstanding.   (*Id.*, PageID.127-38).   This represents a significant number of jobs.   *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").   The vocational expert also testified that if Plaintiff were further limited to sedentary work, with the same additional limitations, there still existed approximately 23,000 jobs which Plaintiff could perform.   (PageID.138-39).

-5-

## I.    Listing of Impairments

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments, which, if present to the severity detailed therein, result in a finding that the claimant is disabled.    Plaintiff argues that the ALJ erred by finding that her left knee impairment did not satisfy the requirements of Section 1.02 of the Listings.

An impairment satisfies a listing "only when it manifests the specific findings described in all of the medical criteria for that particular impairment."    *Lambert v. Commissioner of Social Security*, 2013 WL 5375298 at *8 (W.D. Mich., Sept. 25, 2013) (citing 20 C.F.R. §§ 404.1525(d) and 416.925(d)).    Plaintiff bears the burden to demonstrate that she satisfies the requirements of a listed impairment.    *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002).    Plaintiff's burden, however, is not easily met.    *See Peterson v. Commissioner of Social Security*, 552 Fed. Appx. 533, 539 (6th Cir., Jan. 21, 2014) ("the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation").

A.    Section 1.02

Section 1.02 of the Listing applies to:

Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).    With:

-6-

> A.    Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> OR
>
> B.    Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R., Part 404, Subpart P, Appendix 1 § 1.02A.

Plaintiff argues that, because she cannot ambulate effectively, her impairment satisfies Section 1.02(A).   Regarding such, the regulations provide, in relevant part, as follows:

> (1) Definition.   Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.   (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.   They must have the ability to travel without companion assistance to and from a place of employment or school.   Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single

-7-

hand rail.   The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.00(B)(2)(b).

The record does not support Plaintiff's argument that she lacked the ability to ambulate effectively.   Plaintiff began experiencing left knee pain in late 2016. (ECF No. 7-9, PageID.734-40).   Subsequent examinations revealed that Plaintiff was suffering a meniscus tear, the presence of loose bodies within her knee, and osteoarthritis.   (*Id.*, PageID.734-39, 743-48).   On January 31, 2017, Plaintiff underwent surgery on her left knee.   (*Id.*, PageID.743-48).   Following surgery, Plaintiff was referred to physical therapy, but she was subsequently discharged for non-attendance.   (*Id.*, PageID.756).

On March 9, 2017, Plaintiff's surgeon reported that Plaintiff was experiencing "straight alignment" of her left knee and was ambulating with a "normal" gait.   (*Id.*, PageID.729).   On April 26, 2017, Plaintiff reported that she was not experiencing any left knee pain.   (*Id.*, PageID.723).   Treatment notes dated November 29, 2017, indicate that Plaintiff exhibited a "normal" gait.   (ECF No. 7-15, PageID.1179). Treatment notes dated December 14, 2017, reveal the same.   (*Id.*, PageID.1175). Treatment notes dated January 24, 2018, reveal that Plaintiff exhibited "normal" strength and coordination with no evidence of lower extremity abnormality.   (*Id.*, PageID.1172).   Treatment notes dated March 27, 2018, indicate that Plaintiff walked with a "normal" gait.   (*Id.*, PageID.1170).   Treatment notes dated May 9, 2018, likewise indicate that Plaintiff exhibited a "normal" gait.   (*Id.*, PageID.1167).

-8-

This evidence constitutes ample support for the ALJ's decision that Plaintiff failed to satisfy Listing 1.02(A).   In response, Plaintiff first argues that the evidence identified above, must somehow be discounted because such was reported by her primary care providers rather than orthopedic specialists.   This argument is rejected for two reasons.   First, Plaintiff cites to no authority to support this proposition.   Second, even if the Court assumes that, when weighing competing or contradictory evidence, greater weight should be afforded to the observations of a specialist, Plaintiff has failed to identify any evidence from a specialist which is contrary to or refutes the evidence cited above.

Instead, Plaintiff cites to treatment notes dated March 25, 2015, and December 5, 2016, regarding her condition well before her left knee surgery referenced above.   (ECF No. 7-7, 7-10, PageID.532, 767).   Plaintiff also cites to a June 16, 2016, Medical Source Statement in which the doctor failed to identify any functional limitations from which Plaintiff suffered.    (ECF No. 7-8, PageID.648-52).   Finally, Plaintiff cites to the temporary imposition of functional limitations following an incident, on March 10, 2018, in which she twisted her left knee.   (ECF No. 7-15, 7-16, PageID.1194, 1258).   Plaintiff has not identified any evidence, however, that these limitations were extended beyond their initial two-month limitation.

In sum, the ALJ's conclusion that Plaintiff does not lack the ability to ambulate effectively is supported by substantial evidence.   Thus, the ALJ's decision that Plaintiff failed to meet, equal, or otherwise satisfy the requirements of Listing

1.02(A) is supported by substantial evidence.    Accordingly, this argument is rejected.

## II.    Residual Functional Capacity

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations."    *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").    Plaintiff argues that she is entitled to relief because the ALJ failed to properly assess her RFC.    Specifically, Plaintiff argues that the ALJ overstated the amount of time she can stand or walk during a workday.

The ALJ is tasked with determining a claimant's RFC.    *See* 20 C.F.R. §§ 404.1546(c), 416.946(c).    While the ALJ may not "play doctor" and substitute her opinion for that of a medical professional, the ALJ is not required to tailor her RFC assessment to any particular opinion or item of evidence.    *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity."    *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004).

Plaintiff first argues that the ALJ failed to sufficiently consider the extent to which she is limited due to fibromyalgia and rheumatoid arthritis. The ALJ acknowledged that these impairments were severe and discussed in detail the medical evidence. The evidence cited by the ALJ, including the evidence discussed above, provides substantial support for his RFC assessment. The evidence cited by Plaintiff (ECF No. 7-7, 7-9, PageID.514-45, 669-95) reveals that her rheumatoid arthritis was stable and responded favorably to medication. (*Id.*, PageID.514-45, 669-95). This evidence, like the evidence discussed above, also reveals that Plaintiff has a history of "non-compliance with meds and appointments." (ECF No. 7-9, PageID.669).

Plaintiff also faults the ALJ for giving "no weight" to a June 16, 2016, Medical Source Statement in which the doctor failed to identify any functional limitations from which Plaintiff suffered. (ECF No. 7-8, PageID.648-52). Plaintiff fails to articulate how this evidence advances her cause. Finally, Plaintiff argues that she suffers from medication side effects that limit her to a greater extent than the ALJ recognized. Plaintiff has failed, however, to cite to any treatment notes or findings by her care providers that support this argument. In sum, Plaintiff has failed to demonstrate that the ALJ's RFC assessment is legally deficient. Instead, Plaintiff simply wants this Court to re-weigh the evidence and reach a different conclusion. As previously noted, however, this is something the Court cannot do. Accordingly, this argument is rejected.

-11-

Alternatively, even if the Court assumes that Plaintiff's ability to stand or walk is more limited than the ALJ concluded, the Court finds that any such error is harmless.    As noted above, the vocational expert testified that even if Plaintiff were limited to sedentary work, there still existed a significant number of jobs which Plaintiff could perform.    The record does not support the argument that, with respect to her ability to stand or walk, Plaintiff is unable to perform sedentary work. *See* 20 C.F.R. §§ 404.1567, 416.967 (while there may exist "a certain amount of walking and standing" in the performance of sedentary work, such work is generally performed while sitting).    Accordingly, any error in the ALJ's RFC analysis, with respect to Plaintiff's ability to stand or walk, is harmless.    *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (recognizing that the harmless error doctrine is intended to prevent reviewing courts from becoming "impregnable citadels of technicality"); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within such time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: October 9, 2020                    /s/ Phillip J. Green
                                         PHILLIP J. GREEN
                                         United States Magistrate Judge